1

2                                                                    **JS – 6**

3                                                          **LINKS: 16, 17**

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

11                                    )
                                      )
12   JAMES KELLER, individually and on )   **Case No. CV 11-06158 GAF (SHx)**
     behalf of all others similarly situated, )
13                                    )
                            Plaintiff, )   MEMORANDUM & ORDER
14                                    )   REGARDING MOTIONS FOR FINAL
           v.                         )   APPROVAL OF CLASS ACTION
15                                    )   SETTLEMENT. AWARD OF
                                      )   ATTORNEYS' FEES. COSTS AND
16   GASPARI NUTRITION, INC., a New   )   PLAINTIFF SERVICE AWARD
     Jersey Corporation, and DOES 1   )
17   through 100, inclusive,          )
                                      )
18                          Defendants. )
                                      )
19   _____)

20

21                                    **I.**

22                            **INTRODUCTION**

23          Plaintiff brings this class action lawsuit against Defendants Gaspari Nutrition

24   Inc., alleging various claims under the California Business and Professions and Civil

25   codes in connection with the marketing and sale of Gaspari's "Novedex XT

26   Testosterone Booster" product ("Novedex").  (Docket No. 16-1, Mem. Final Settlement

27   Approval at 2.)  The claims all pertain to Defendant's recall of Novedex for containing

28   an illegal, non-dietary ingredient, despite Defendant's advertisements that the product

     was, among other things, a "dietary supplement" and a "legal product."  (Id.)

1

2        Plaintiff filed this action in California state court on November 10, 2010.

3   (Docket No. 1, Not., Ex. A [Compl.].)  After Defendant removed to this Court, Plaintiff

4   filed a First Amended Complaint and successfully moved to remand the case to state

5   court.  (Docket No. 16-2, Declaration of Peter J. Farnese ("Farnese Decl.") ¶¶ 8–9.)

6   The parties simultaneously  negotiated a settlement agreement, which was completed in

7   July 2011.  (Id. ¶ 9.)  Shortly thereafter, Plaintiff filed a Second Amended Complaint,

8   and Defendant again removed to this Court.  (Id. ¶ 10.)

9        On August 9, 2011, Plaintiff moved for preliminary approval of the settlement,

10  and, following changes to the proposed opt-out procedures to be provided in the class

11  notice, this Court granted preliminary approval.  (Docket No. 13, September 30, 2011

12  Order; see also Docket Nos. 8–13.)  Plaintiff now moves for [1] final approval of the

13  settlement, and [2] approval of the payment of attorney's fees and costs, the individual

14  service payment, and the settlement administration expenses.  (Mem. Final Settlement

15  Approval at 25; Mem. Fees and Service Award at 13.)  For the reasons set forth below,

16  the Court **GRANTS** the motions.

17                              **II.  BACKGROUND**

18        The Settlement Agreement contemplates a release of claims by the settlement

19  class, defined as all purchasers of Novedex for personal use from November 2, 2006 to

20  October 3, 2011.  (Id. at 3; Settlement Agreement § I.Y.)  Defendants have agreed to

21  establish a $1 million dollar non-reversionary "common fund," which will consist of

22  $750,000 in cash and $250,000 worth of Gaspari's "Viridex XT" product, a

23  testosterone-booster designed to replace the recalled Novedex.  (Id. at 4; Settlement

24  Agreement § III.1.)  Defendants do not, however, contemplate a release of any personal

25  injury claims by this settlement.  (Settlement Agreement § VII.B.)

26        Members of the settlement class will be able to make $20 claims for each bottle

27  of Novedex that was purchased for personal consumption, provided that they can show

28  proof of purchase.  (Mem. Final Settlement Approval at 4; Settlement Agreement §

    III.3.a.)  If no proof of purchase is shown, a claimant can receive $10 per bottle,

1

2   provided that the claimant submits a signed declaration that he or she purchased the

3   product.  (Id.)  If the cash in the fund has not been exhausted then, at the parties' option,

4   the monetary reimbursement can increase to $20 per bottle for those persons who can

5   not show proof of purchase.  (Settlement Agreement § III.3.a.)  In either case, claims

6   will be limited to four bottles of Novedex per person.  (Settlement Agreement § VII.B.)

7   Alternatively, class members may receive a bottle of Viridex XT, but are limited to only

8   one bottle and must agree not to sell or distribute the product.  (Id.)  If the number of

9   claims submitted is fewer than the number of bottles available then, at the parties'

10  option, claimants will be eligible to receive two bottles of Viridex XT, rather than one.

11  (Settlement Agreement § III.3.a.)

12          Furthermore, Plaintiff's counsel is entitled to fees not in excess of $250,000,

13  costs not in excess of $10,000, and all costs of administering the settlement will be paid

14  out of the common fund, including the destruction of unclaimed bottles of Viridex XT.

15  (Settlement Agreement §§ VI.A–B.)  Plaintiff is also allowed to apply for an incentive

16  award in the amount of $3,000, for his services on behalf of the class.  (Mem. Final

17  Settlement Approval at 6; Settlement Agreement § VI.D.)  Finally, any funds left after

18  all claims have been made will be distributed cy pres to two separate charities.

19  (Settlement Agreement § III.3.a.)

20          Following preliminary approval of the settlement, notice has been provided to

21  as many potential class members as is feasibly possible.  A settlement website and a 24-

22  hour toll-free telephone number became available on November 1, 2011 and continued

23  until January 16, 2012, the cut-off date for claims.  (Docket No. 19, Supp. Mem. Final

24  Settlement Approval at 1.)  A press release regarding the settlement was provided to

25  over 4,200 print and broadcast outlets and 5,500 separate internet points provided

26  information settlement information to the public.  (Mem. Final Settlement Approval at

27  7.)  This included multiple advertisements on the Internet, including on the websites of

28  Google, Yahoo, and YouTube, and in the magazines Muscle & Fitness and Men's

Fitness. (Docket No. 16-4, Declaration of Cameron R. Azari ("Azari Decl.") ¶¶12–22.)

As of January 25, 2012, the settlement website has generated over 241,000 separate views and 133 paper Claims Forms have been submitted by mail and 1,727 have been submitted electronically.  (Supp. Mem. Final Settlement Approval at 1.)  Currently, there are 1,844 valid and complete claims entitling the class to an estimated award of $40,000.  (Docket No. 19, Declaration of Jenny Penning ("Penning Decl.") ¶¶ 6, 8.)  The parties have also received one late request to opt out of the settlement and one objection that has been submitted along with a claim form.  (Id. ¶ 11.)  The cost of administration has been $23,791.90 and the settlement administrator estimates these costs will not exceed an additional $50,000.  (Id. ¶ 12.)

## III.  DISCUSSION

### A.  MOTION FOR FINAL APPROVAL OF SETTLEMENT

#### 1.  LEGAL STANDARD

Under Rule 23(e) of the Federal Rules of Civil Procedure, "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  A court must engage in a two-step process to approve a proposed class action settlement.  First, the court must determine whether the proposed settlement deserves preliminary approval.  Nat'l Rural Telecomms. Coop. v. DirecTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004).  Second, after notice is given to class members, the Court must determine whether final approval is warranted.  Id.  A court should approve a settlement pursuant to Rule 23(e) only if the settlement "is fundamentally fair, adequate and reasonable."  Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1375 (9th Cir. 1993) (internal quotation marks omitted); accord In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)).

Circuit law teaches that the court must balance the following factors to determine whether a class action settlement is fair, adequate, and reasonable:

(1) the strength of the plaintiff's case;

(2) the risk, expense, complexity, and likely duration of further litigation;

(3) the risk of maintaining class action status throughout the trial;

(4) the amount offered in settlement;

(5) the extent of discovery completed and the stage of the proceedings;

(6) the experience and views of counsel;

(7) the presence of a governmental participant; and

(8) the reaction of the class members to the proposed settlement.

Torrisi, 8 F.3d at 1375; accord Linney v. Cellular Alaska Partnership, 151 F.3d 1234, 1242 (9th Cir. 1998); Hanlon, 150 F.3d at 1026. "In addition, the settlement may not be the product of collusion among the negotiating parties." In re Mego Fin. Corp. Sec. Litig., 213 F.3d at 458. These factors are not exclusive, and one factor may deserve more weight than the others depending on the circumstances. Torrisi, 8 F.3d at 1376. In some instances, "one factor alone may prove determinative in finding sufficient grounds for court approval." Nat'l Rural Telecomms. Coop., 221 F.R.D. at 525–26 (citing Torrisi, 8 F.3d at 1376). In addition, "[t]he involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair." Linney v. Cellular Alaska Partnership, Nos. C-96-3008 DLJ, C-97-0203 DLJ, C-97-0425 DLJ, C-97-0457 DLJ, 1997 WL 450064, *5 (N.D. Cal. July 18, 1997), aff'd, 151 F.3d at 1234.

## 2. APPLICATION OF TORRISI FACTORS

### a. Strength of Plaintiff's Case

Plaintiff faces several challenges to succeeding on the merits of his claims; thus, this factor favors approving the settlement. Most threatening is Gaspari's anticipated motion to dismiss on the basis that Plaintiff's Second Amended Complaint is an improper attempt to enforce the Food, Drug & Cosmetic Act through California's Business and Profession code sections 17200, et seq., and 17500, et seq. (Mem. Final

1

2   Settlement Approval at 2, 10.)  Although Gaspari previously made this argument in a

3   motion to dismiss Plaintiff's First Amended Complaint, the Court remanded the case

4   and did not reach the merits of the argument.  (Farnese Decl. ¶¶ 8–9.)

5          Plaintiff also faces significant challenges in certifying a class.  Through their

6   investigation Plaintiff's counsel discovered that Gaspari was prepared to present

7   evidence on a variety of individual issues that might defeat class certification.  (Id. at

8   10.)  The evidence included that Novedex "was a well-received product, many

9   consumers successfully used the product to achieve the advertised benefits, and

10   Gaspari's customers expressed displeasure that the product was recalled and no longer

11   available, not that it contained a non-dietary ingredient."  (Id. at 11.)  Gaspari also

12   "possessed multiple forms of evidence that could be utilized to rebut the presumption of

13   materiality and reliance," primarily that Gaspari's customers "are 'sophisticated'

14   consumers who through their own knowledge and research" understood the nature of

15   the ingredients in Novedex.  (Id. at 11.)

16          The claims asserted in the SAC face individual hurdles as well.  Plaintiff's

17   claims premised on Gaspari's alleged misrepresentation of the efficacy of their products

18   face significant challenges.  First, Plaintiff's counsel learned through investigation

19   during this litigation that Gaspari possessed scientific evidence of the efficacy of each

20   specific ingredient in Novedex, and a published clinical study on the product.  (Mem.

21   Final Settlement Approval at 10–11.)  Second, the case would involve significant

22   dispute regarding the science and efficacy of Novedex, the resolution of which would

23   require multiple experts.  (Id. at 11.)  Based on these issues, Plaintiff believes that

24   recovery is far from certain because the trial could revolve largely around a credibility

25   contest between experts.

26          Plaintiff's claims premised on "advertising injury" or fraud claims premised on

27   misleading the public would also be hotly contested by Gaspari.  (Id. at 11–12.)  As

28   discussed above, Gaspari "possesse[s] multiple forms of evidence that could be utilized

to rebut the presumption of materiality and reliance," primarily that Gaspari's customers

"are 'sophisticated' consumers who through their own knowledge and research" understood the nature of the ingredients in Novedex.  (Id. at 11.)  Therefore, even if Plaintiff could establish that the science did not support the efficacy of Novedex, Plaintiff may struggle to demonstrate that consumers were actually injured or defrauded by the alleged false advertising.

Thus, despite their confidence in the merits of Plaintiff's legal position, class counsel determined that a settlement at this point in the litigation for the agreed upon sum "is extremely beneficial . . . and that there were significant risks of less or no recovery, particularly in a complex case such as this one.  (Id. at 10).  By reaching a settlement agreement, Plaintiff avoids this uncertainty.  This factor therefore weighs in favor of granting final approval.

### b.  The Risk, Expense, Complexity, and Likely Duration of Further Litigation

The central factor relating to the "risk, expense, complexity, and likely duration" prong of the Torrisi analysis is the expense of litigation.  Nat'l Rural Telecomms. Coop., 221 F.R.D. at 526.  "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  Id. (quoting 4 A. Conte & H. Newberg, Newberg on Class Actions, § 11:50 at 155 (4th ed. 2002)).

Plaintiff points out that complex, science-intensive cases like this one are expensive and time-consuming to litigate.  (Mem. Final Settlement Approval at 12.)  In addition, the settlement avoids the litigation of future motions to dismiss and motions for summary judgment, and "avoids additional costly and time-consuming fact and expert discovery."  (Id.)  Assuming Plaintiff and the class were to survive these motions, Plaintiff estimates that trial would take "weeks and appeals of rulings on summary judgment or trial would likely add years to the litigation."  (Id.)  Without settlement, continuing litigation could cost "a minimum of several hundred thousand (if not millions) of additional dollars by both sides, with the possibility that the end results

1

2   would be no better for the class, and might even be worse." (Id. at 12–13.)  Thus, the

3   risks and potential expenses to both sides from further litigation weigh in favor of final

4   approval, consistent with the policy preferring settlement over further time-consuming

5   litigation.  Nat'l Rural, 221 F.R.D. at 525–26.

6              ***c. The Risk of Maintaining Class Action Status Through Trial***

7              As discussed, the settlement class faces a substantial risk that, should this case

8   proceed without settlement, class definition and certification would entail significant

9   obstacles.  Approval of the settlement avoids this risk.

10             ***d. The Amount Offered in Settlement***

11             ". . . [A] settlement should stand or fall on the adequacy of its terms."  In re

12  Corrugated Container Antitrust Litigation, 643 F.2d 195, 211 (5th Cir. 1981).  The

13  Court examines "the complete package taken as a whole, rather than the individual

14  component parts," to determine whether the proposal is fair.  Officers for Justice v. Civ.

15  Serv. Comm'n of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982).  The Plan of

16  Allocation, like the class settlement as a whole, must be fair, reasonable, and adequate.  Class

17  Plaintiffs v. City of Seattle, 955 F.2d 1268, 1284–85 (9th Cir. 1992); see also In re Omnivision

18  Techs., Inc., 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008).

19             Under the terms of the Settlement, the Maximum Settlement Amount is $1

20  million dollars, consisting of $750,000 in cash and $250,000 worth of Gaspari product.

21  Plaintiff proposes that the fund will be paid out as follows: (1) 25 percent of the fund

22  ($250,000) is proposed to be paid in attorney fees; (2) $9,004.27 in court costs; (3)

23  $23,719.90, plus an additional amount not to exceed $50,000, in claims administration

24  costs; (4) $3,000 for the individual Plaintiff's service enhancement award; (5)

25  approximately $40,000 to the class; and (6) the remainder in a cy pres distribution to the

26  Michael J. Fox Foundation for Parkinson's Research ("MJFF") and the Prostate Cancer

27  Foundation ("PCF"), in equal shares.  (Mem. Final Settlement Approval at 4–6; Mem.

28  Fees and Service Award at 1; Settlement Agreement ¶¶ 29, 53.)

1

2      The Court concludes that the terms of the settlement are fair and weigh in favor

3  of granting final approval.  Class members are all purchasers of Novedex for personal

4  use from November 2, 2006 to October 3, 2011.  (Settlement Agreement § I.Y.)

5  Plaintiff's primary theory of recovery is under California's Business and Profession

6  Code sections 17200, et seq., and 17500, et seq., which provides only for restitutionary

7  relief.  (Mem. Final Settlement Approval at 1, 13–14.)  Restitution in the UCL context

8  means the return of money to those persons from whom it was taken or who had an

9  ownership interest in it," which is the amount Gaspari received from its distributors.

10 Shersher v. Superior Court, 65 Cal.Rptr.3d 634, 638 (2007).  Here, Gaspari, on average,

11 received less than $20.00 per bottle of Novedex it sold to Plaintiff and the class.  (Mem.

12 Final Settlement Approval at 13–14; Settlement Agreement § III.3.b.)  Plaintiff and the

13 class are thus receiving more than the average amount Gaspari received for each bottle,

14 as class members that chose a cash payment will be receiving $20.00 per bottle, for a

15 maximum of four (4) bottles purchased or $80.00, regardless of whether they can

16 submit a valid proof of purchase; and class members that chose to receive product are

17 receiving two (2) bottles of Viridex XT, worth approximately $140.00.  (Mem. Final

18 Settlement Approval at 4.)  As restitution limits the relief Plaintiff and the class are

19 entitled to, and questions of proof would be difficult, the Court finds the amount offered

20 in settlement represents a fair recovery to the class, and weighs in favor of granting final

21 approval.

22     Moreover, the Court finds nothing inappropriate about the cy pres distribution to

23 MJFF and PCF.  Each charity is a national organization engaged in researching topics

24 germane to male health.  (Supp. Mem. Final Settlement Approval at 2–5.)  The subject

25 of this litigation is Gaspari's testosterone-increasing supplement Novedex, a product

26 marketed to and taken by male weight lifters.  Accordingly, the cy pres distribution to

27 the organizations of the funds unclaimed by the class is proper.  See Nachshin v. AOL,

28 LLC, 663 F.3d 1034, 1036–37 (9th Cir. 2011) ("The cy pres doctrine allows a court to

distribute unclaimed or non-distributable portions of a class settlement fund to the "next

1

2   best" class of beneficiaries. <u>Cy pres</u> distributions must account for the nature of the

3   plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent

4   class members, including their geographic diversity.") (internal citation omitted).

5               ***e.  The Extent of Discovery Completed and the Stage of the***

6                     ***Proceedings***

7               The amount of discovery completed affects approval of a stipulated settlement

8   because it indicates whether the parties have had an "adequate opportunity to assess the

9   pros and cons of settlement and further litigation."  <u>In re Cylink Sec. Litig.</u>, 274 F.

10  Supp. 2d 1109, 1112 (N.D. Cal. 2003).  Nevertheless, "[i]n the context of class action

11  settlements, 'formal discovery is not a necessary ticket to the bargaining table' where

12  the parties have sufficient information to make an informed decision about settlement."

13  <u>Linney</u>, 151 F.3d at 1239 (quoting <u>In re Chicken Antitrust Litig.</u>, 669 F.2d 228, 241 (5th

14  Cir. 1982)).

15              Here, the parties engaged in informal discovery, exchanging data and

16  documents and engaging in extensive discussions about their respective factual

17  contentions and legal theories throughout the pendency of this action.  (Mem. Final

18  Settlement Approval at 14–15; Farnese Decl. ¶¶ 13–15.)  Plaintiff's counsel assert that

19  they conducted extensive factual and legal investigation, including:

20          •   Obtaining and reviewing documents and data related to Novedex XT,

21              including historic labels, advertisements, websites, scientific

22              substantiation information, and sales data;

23          •   Researching, in great detail, each of the ingredients in Novedex XT;

24          •   Obtaining and reviewing a series of clinical studies on Novedex XT;

25          •   Working with a statistical consultant to analyze the clinical studies to

26              determine whether they truly generated statistically significant (and, thus

27              legally supportable) results;

28

- • Reviewing and working with scientific and regulatory consultants regarding the ingredients in Novedex XT and documents obtained in Class Counsels's investigation related to the ingredients in Novedex XT;
- • Working with a sports nutrition industry consultant on sales and marketing data related to Novedex XT, along with sales, marketing, and pricing sports nutrition products generally;
- • Conducting consumer research and interviews related to the labeling and advertising of sports nutrition products, generally, and Novedex XT, specifically; and
- • Conducting a significant amount of legal research on class issues, potential defenses to class certification and merits issues.

(Mem. Final Settlement Approval at 14–15; Farnese Decl. ¶¶ 13–15, 24.)  After months of negotiations and research the parties tentatively reached a settlement on April 1, 2011, and that agreement was finalized and executed on July 15, 2011.  (Farnese Decl. ¶ 15.)  The Court is persuaded that the parties had sufficient information to make an informed decision about the settlement.  This factor weighs in favor of final approval.

### f. The Experience and Views of Counsel

"'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." Nat'l Rural, 221 F.R.D. at 528 (quoting In re Painewebber Ltd. P'ships Litig., 171 F.R.D. 104, 125 (S.D.N.Y. 1997)).  Furthermore, a presumption of fairness applies when settlements are negotiated at arm's length, because of the decreased chance of collusion between the negotiating parties.  In re First Capital Holdings Corp. Fin. Prods. Secs. Litig., MDL Docket No. 901 (JGD), 1992 U.S. Dist. LEXIS 14337, at *5–6 (C.D. Cal. June 10, 1992).

In the present case, Plaintiff's counsel is experienced in class action and consumer litigation, with particular emphasis on matters involving complex matters and dietary supplements.  (Mem. Final Settlement Approval at 15–16; Farnese Decl. ¶¶

11

35–36.)  Class counsel's experience includes over thirty consumer class action cases and many nation-wide class action settlements.  (Farnese Decl. ¶ 36.)  Accordingly, this factor also weighs in favor of granting final approval.

### g.  The Presence of a Governmental Participant

This factor is not applicable because there is no governmental participant in this case.  See Nat'l Rural, 221 F.R.D. at 528.

### h.  The Reaction of Notified Class Members to the Proposed Settlement

### I.  Notice Procedures

After the Court preliminarily approved the settlement, claims administrator Ipiq set up a settlement website and a 24-hour toll-free telephone number that became available on November 1, 2011 and continued through January 16, 2012, the cut-off date for claims.  (Docket No. 19, Supp. Mem. Final Settlement Approval at 1.)  A press release regarding the settlement was provided to over 4,200 print and broadcast outlets and 5,500 separate Internet points provided settlement information to the public.  (Mem. Final Settlement Approval at 7.)  As noted above, this included multiple advertisements placed on the Internet, including on the websites of Google, Yahoo, and YouTube, and in the magazines Muscle & Fitness and Men's Fitness. (Azari Decl. ¶¶ 12–22.)  The Court concludes that this notice complied with its September 30, 2011 Order and that it satisfies Federal Rule of Civil Procedure 23(c)(2)'s requirement that notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); (see September 30, 2011 Order).

### ii.  Conclusion Regarding Class Reaction

As of January 25, 2012, the settlement website has generated over 241,000 separate views and 133 paper Claims Forms have been submitted by mail and 1,727 have been submitted electronically.  (Supp. Mem. Final Settlement Approval at 1.)  Currently, there are 1,844 valid and complete claims entitling the class to an estimated award of $40,000.  (Penning Decl. ¶¶ 6, 8.)  Ipiq has also received one late request for

exclusion, and one objection that was accompanied by a claims form.  (<u>Id.</u> ¶¶ 9–10.)  "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of [the] proposed class settlement . . . are favorable to the class members."  <u>Nat'l Rural</u>, 221 F.R.D. at 529.  Notice regarding the proposed settlement has been widely disseminated to potential class members; only one class member has objected; and only one of the several hundred thousand potential class members have opted out of the settlement.  Thus, the Court concludes that the reaction of the class weighs in favor of granting final approval.

### 3. CONFIRMATION OF CERTIFICATION

Plaintiff also requests confirmation of the Court's prior preliminary certification of the class for settlement.  (Mem. Final Settlement Approval at 7.)  In accordance with its September 30, 2011 Order, and for the reasons set forth in that Order, the Court confirms its prior finding that the Settlement Class complies with the requirements of Rules 23(a) and 23(b)(3), and should therefore be certified for purposes of settlement. (September 30, 2011 Order at 6.)

### 4. CONCLUSION RE: MOTION FOR FINAL APPROVAL

Based on the above analysis, the Court concludes that, on balance, the <u>Torrisi</u> factors weigh in favor of granting final approval of the settlement agreement, because it is fundamentally fair, adequate, and reasonable.  Accordingly, Plaintiff's motion for final approval is **GRANTED**.

### B. MOTION FOR ATTORNEY FEES, PLAINTIFF'S INCENTIVE AWARD AND COSTS

### 1. ATTORNEY FEES

Plaintiff's counsel has separately moved for approval of their attorney fees in this matter.  Circuit law teaches that class action plaintiffs' attorney fees may be based on a percentage recovery from a common fund.  <u>See</u> <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043 (9th Cir. 2002); <u>Paul, Johnson, Alston & Hunt v. Graulty</u>, 886 F.2d 268, 272 (9th Cir. 1989); <u>see also</u> <u>Torrisi</u>, 8 F.3d at 1376.  If an attorney seeks a percentage recovery, 25 percent of the common fund has been established as the "benchmark"

award.  <u>Torrisi</u>, 8 F.3d at 1376.

In Plaintiff's motion for preliminary approval, 25 percent of the Maximum Settlement Amount was allocated as attorney fees to class counsel.  (Docket No. 8-1, Mem. Prelim. Approval at 10.)  This Court preliminarily approved the Settlement Agreement, and stated that any request by class counsel for an award of fees or reimbursement of costs should be filed concurrently with a motion for final approval, accompanied by supporting evidence.  (September 30, 2011 Order at 11.)  Plaintiff's counsel now move for an award of attorney fees equal to 25 percent of the total settlement and submit supporting declarations and time records.  (Docket No. 17-1, Mem. Attorney Fees, Costs & Service Award; Farnese Decl. ¶¶ 37–45, Exs. 2 & 3 [Fee Records]; Docket No. 16-3, Declaration of Gillian L. Wade ("Wade Decl.") ¶ 9.)  As the Court has previously recognized, the proposed settlement obtains a fair recovery for class members.  In the absence of the settlement, class members face substantial hurdles to recovery.  Moreover, a lodestar cross-check confirms that the fee award is reasonable.  (Mem. Attorney Fees, Costs & Service Award at 9–10.)  As of the date the motion was filed, counsel have expended 445.7 hours litigating this case and generated approximately $230,985.00 in fees at their usual and/or reasonable hourly rates.  (Mem. Attorney Fees, Costs & Service Award at 9; Farnese Decl. ¶ 68 ($178,320.00); Wade Decl. ¶ 9 ($52,665.00).)

Objector Bryan Anderson objects to this fee award on the grounds that it "will take up a significant part of this settlement."  (Docket No. 18, Not. of Intervention and Objection at 3.)[1]  However, this fee award will not diminish the reward received by

---

[1]  The Court construes Bryan Anderson's "intervention" as an objection.  Anderson cannot claim that intervention is necessary to protect his interests because he had the ability to opt out and to pursue his own claim.  <u>See In re Charles Schwab Corp. Sec. Litig.</u>, 2011 WL 633308, at *4 (N.D. Cal. Feb. 11, 2011) (finding that class members have the ability to opt out of a class and thereby protect their interests by "other means" than intervention) (quoting <u>Cal ex. Rel. Lockyer v. United States</u>, 450 F.3d 436, 442 (9th Cir. 2006)).  Moreover, Anderson has not shown that he is inadequately represented by Plaintiff.  The conclusory statement that Plaintiff is "not representing the interests of the unnamed class members" (Not. of Intervention and Objection at 3), is insufficient to rise to the level necessitating intervention because Anderson's objection revolves largely around litigation strategy.  <u>See Arakaki v. Cayetano</u>, 324 F.3d

14

1

2   class members, and as discussed above, 25 percent is a reasonable "benchmark"

3   amount.  See Torrisi, 8 F.3d at 1376.

4        Consistent with the Court's preliminary approval, the Court finds that Plaintiff's

5   counsel has performed their expected duties as class counsel and concludes that the 25

6   percent fee award is reasonable and consistent with the established benchmark.  The

7   Court **GRANTS** Plaintiff's counsels' motion for fees.

8             **2. INDIVIDUAL PLAINTIFF'S INCENTIVE AWARD**

9        Incentive awards are evaluated using "relevant factors includ[ing] the actions

10  the plaintiff has taken to protect the interests of the class, the degree to which the class

11  has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff

12  expended in pursuing the litigation."  Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir.

13  2003) (discussing plaintiff incentive awards in wage-and-hour class action cases and

14  quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)).

15        The named Plaintiff, James Keller, requests an incentive award of $3,000.

16  (Mem. Attorney Fees, Costs & Service Award at 11.)  Plaintiff's counsel asserts that

17  Plaintiff devoted a great deal of time and effort assisting counsel throughout the course

18  of this litigation; that "his willingness to come forward and act as class representative

19  was instrumental in bringing this case forward"; and that "Mr. Keller has worked with

20  class counsel throughout the investigation of the Novedex XT and has played an active

21  role in reviewing documents, pleadings, and in monitoring the settlement negotiations."

22  (Id. at 12; Farnese Decl. ¶¶ 46–47; Docket No. 19-2, Declaration of James Keller

23  ("Keller Decl.") ¶ 10.)  In sum, class counsel believes that Plaintiff has committed

24  "significant time to the prosecution of this action."  (Farnese Decl. ¶ 46.)

25        Objector Bryan Anderson objects to this incentive award on the grounds that it

26  "will take up a significant part of this settlement."  (Not. of Intervention and Objection

27

28    1078, 1086 (9th Cir. 2003) (finding that when interests are the same but litigation strategies differ, intervention is not normally justified) (citations omitted).  Finally, Anderson's desire not to attend the fairness hearing does not by itself give him grounds to intervene.

at 3.)  However, this incentive award will not have any effect upon the award granted to class members.  Moreover, $3,000 or 0.3% of the settlement amount is typical and fair under Ninth Circuit law.  Staton v. Boeing, 327 F.3d 938, 953 (9th Cir. 2003) (stating that district courts must examine each proposed incentive award, considering the plaintiff's actions protecting class interests, the benefit provided to the class based on those actions, and the amount of time and effort expended by the plaintiff).  Here, Plaintiff's incentive award is not excessive, as the Plaintiff assisted counsel in pursuing the case, which benefitted both the class and the Objector.  Furthermore, as noted above, Plaintiff's incentive award will not diminish the award recovered by the class members.

The Court finds that an incentive award of $3,000 in securing a positive result for himself and his fellow class against Gaspari is reasonable.  The Court **GRANTS** Plaintiff's motion that he be awarded a total of $3,000.

### 3. COSTS

When analyzing requests for expenses, courts are to consider whether the amounts "would normally be charged to a fee paying client."  Trs. of Const. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co., 460 F.3d 1253, 1256 (9th Cir. 2006).

The Settlement Agreement provides for $10,000 as the maximum amount allocated for past, present, and future costs incurred by class counsel.  Class counsel has asked for $9,004.27, and has submitted evidence indicating that they incurred costs totaling that amount in litigating this case.  (Mem. Attorney Fees, Costs & Service Award at 10–11; Farnese Decl. ¶¶ 41–43 ($6,307.48); Wade Decl. ¶¶ 10–12 ($2,196.79).)  These expenses include legal research, filing and service fees, consultants, postage and FedEx charges, and travel.  Consistent with the Court's preliminary approval, the Court holds that the declaration-supported amount of $9,004.27 in costs is acceptable and **GRANTS** the motion for costs.

**IV.**

**CONCLUSION**

Based on the foregoing, Plaintiff's motions for final settlement approval, attorney fees, costs, and incentive award are **GRANTED**.


**IT IS SO ORDERED.**


DATED: March 20, 2012

_____

Judge Gary Allen Feess
United States District Court